E-FILED
Friday, 26 June, 2026 10:57:13 AM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**

Morgan Cole on behalf of himself and all others similarly situated

Plaintiffs,

v.

Dalstrong America Inc.,

Defendant

Case No.: 4:26-cv-4053

Hon. Ronald L. Hanna

---

**BRIEF IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

Defendant Dalstrong America Inc., by and through its undersigned attorneys, states as follows for its Brief in Support of its Motion to Dismiss:

**INTRODUCTION**

This case presents a straightforward question with a simple answer: when a plaintiff alleges he visited a website, encountered barriers, and added a product to his cart, but contemporaneous technical records show none of that ever happened, does he have standing to sue? He does not, and this Court should dismiss his Complaint.

Defendant Dalstrong America Inc. sells premium kitchen knives through its website, dalstrong.com. Plaintiff Morgan Cole alleges that on November 3, 2025, he visited that website, encountered accessibility barriers, and attempted to add a meat cleaver to his cart. Defendant's contemporaneous technical records tell a different story: no user from Illinois viewed the Meat Cleaver 9 on that date, and no session matching Plaintiff's alleged conduct occurred. When Defendant raised this discrepancy with Plaintiff's counsel before filing this motion and asked Plaintiff to identify the alleged session or clarify the factual basis for his claims, Plaintiff declined.

A complaint built on a website visit that never happened cannot establish the concrete, particularized injury Article III requires.

That threshold defect would be significant in any case. It is particularly telling here because Plaintiff and his counsel have filed at least twenty-one materially identical ADA website accessibility complaints in this District in the past six months—against sellers of knitting supplies, outdoor furniture, cat food, cleaning services, and now kitchen knives—each reciting the same alleged barriers in the same paragraph, with only the defendant's name and product changed. As the Northern District of Illinois recently observed in a nearly identical case involving Plaintiff's counsel, this pattern operates as "a glorified copy-and-paste operation" in which businesses face pressure to settle "because settling is cheaper than fighting." *Henry v. Omoi, Inc.*, No. 25-CV-3151, 2026 WL 636799, at *2* (N.D. Ill. Mar. 6, 2026). That pattern reinforces what the evidence shows: Plaintiff's allegations reflect a litigation template, not a genuine consumer experience.

Beyond the factual defects, Plaintiff's Complaint suffers from independent legal defects. Plaintiff's intent to return to the Website is explicitly conditional on Defendant first remedying the alleged barriers, a circular theory that asks the Court to presume the injunctive relief Plaintiff seeks in order to establish the standing required to seek it. His emotional distress allegations—humiliation, anxiety, and frustration—are precisely the abstract dignitary harms the Seventh Circuit has held insufficient to confer Article III standing. *Carello v. Aurora Policeman Credit Union*, 930 F.3d 830, 834 (7th Cir. 2019). And his Complaint, structured as a WCAG technical audit rather than an allegation of actual denial of access, does not state a claim under Title III as written—a statute that guarantees meaningful access to goods and services, not technical perfection measured against private guidelines Congress never enacted into law.

For these reasons, Plaintiff's Complaint should be dismissed.

## STATEMENT OF FACTS

### I. Plaintiff and His Attorneys' Nearly Identical Lawsuits

Both Plaintiff and his counsel have a well-documented history of filing a high volume of nearly identical ADA website accessibility complaints. These complaints follow a boilerplate template with only minimal customization, typically inserting the name of the website, the alleged accessibility issues, and a product the plaintiff purportedly attempted to purchase. In 2026 alone, Mr. Cole has filed at least 21 ADA website accessibility cases in this district. See **EXHIBIT 1**.

Plaintiff's allegations regarding barriers in this case are nearly identical to those made by Plaintiff in his many other ADA complaints filed in this district. In each case, he uses a nearly verbatim pleading template, changing only the defendant's name, the product allegedly sought, and the web domain. For example, in *Cole v. Bibi Knitting Yarn, LLC*, Case No. 4:26-cv-4033 (C.D. Ill.), he alleged the same set of barriers while attempting to purchase knitting products; in *Cole v. Pride Manufacturing Company, LLC*, Case No. 4:26-cv-4046 (C.D. Ill.), it was outdoor furniture; in *Cole v. Farmington Farm & Garden, Inc.*, Case No. 4:26-cv-4066 (C.D. Ill.), it was cat food, and in *Cole v. Homeaglow Inc.*, Case No. 4:26-cv-4149 (C.D. Ill.), it was cleaning services. See **EXHIBIT 1**. Yet, regardless of the website or product, the alleged barriers include the same elements in the same paragraph of each complaint: missing or inadequate alt text, inadequate focus order, ambiguous text links, and inaccessible drop-down menus. Compl. at ¶ 32.

### II. Plaintiff's Complaint

Plaintiff Morgan Cole ("Plaintiff") is a visually impaired individual who alleges that he uses screen reader software to access websites on the Internet. Compl. at ¶ 2. Defendant Dalstrong America Inc. ("Dalstrong") is a Delaware limited liability company that sells premium knives and kitchen cookware through its website, https://dalstrong.com/ (the "Website"). *Id.* at ¶¶ 4, 14.

According to the Complaint, Plaintiff visited Dalstrong's Website on one occasion in November 2025 with the intent to purchase a meat cleaver. Compl. ¶ 40. Plaintiff alleges that, while browsing the Website using screen-reader software, he encountered certain features he contends were not fully compatible with his assistive technology, including images without alternative text, an inability for his screen reader to explain visual features of certain products, and that his keyboard focus did not move to a newly opened dialog box. *Id.* He claims that these "access barriers render[ed] the Website inaccessible to, and not independently usable by, blind and visually impaired individuals." *Id.*

Plaintiff does *not* allege that he attempted to contact Dalstrong regarding his experience, sought assistance with any transaction, or attempted to place an order through any alternative means. Nor does he allege that he returned to the Website after his single visit or that he has attempted any subsequent purchase. Plaintiff instead makes a conclusory allegation that he intends to return to the website "immediately" once it becomes accessible. Compl. ¶ 41.

Plaintiff claims that Defendant's conduct has caused Plaintiff to suffer "interference with daily activities, as well as emotional distress, including, without limitation, emotional distress and mental anguish, violation of privacy, humiliation, stress, anger, frustration, embarrassment, and anxiety." Compl. at ¶ 50.

Plaintiff brings a cause of action for "Violation of the Americans with Disabilities Act ("ADA")," alleging that the Website is a place of public accommodation, that Defendant is subject to Title III of the ADA, and that the Website violates the ADA. Compl. at ¶¶ 57-71. Plaintiff also brings a cause of action for "Declaratory Relief," seeking a declaration that the Website contains access barriers causing it to fail to comply with the ADA. Compl. at ¶¶ 72-74. In his Prayer for Relief, Plaintiff requests a preliminary and permanent injunction prohibiting Defendant from

violating the ADA, to compel Defendant to "take all the steps necessary to make the Website, into full compliance with the requirements set forth in the ADA…," a declaration that the Website discriminates against the visually impaired, an order certifying a class, pre and post-judgment interest, an award of costs and expenses with reasonable attorney and expert fees, and any other relief this Court "deems just and proper." Compl. at Prayer for Relief.

**STANDARD OF REVIEW**

A Rule 12(b)(1) standing challenge may be either facial or factual. A "facial challenge argues that the plaintiff has not sufficiently '*alleged* a basis of subject matter jurisdiction.'" *Silha v. ACT, Inc*., 807 F.3d 169, 173 (7th Cir. 2015) (citation omitted) (emphasis in original). "In reviewing a facial challenge, the court must accept all well-pleaded factual allegations as true and draw all reasonable inferences in favor of the plaintiff." *Id*. However, a "factual challenge contends that 'there is *in fact* no subject matter jurisdiction,' even if the pleadings are formally sufficient." *Id*. (citation omitted) (emphasis in original). "In reviewing a factual challenge, the court may look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Id*. "In response to a factual challenge, the plaintiff can no longer rest on the allegations in the complaint but must adduce specific *evidence* to satisfy each of the elements necessary to establish his standing to sue." *Flynn v. FCA US LLC*, 39 F.4th 946, 952 (7th Cir. 2022) (emphasis in original).

To survive a motion to dismiss pursuant to Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requirement is satisfied when the factual content in the complaint "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

(citation omitted). While the Court must accept well-pleaded factual allegations as true, it need not accept "legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action." *Id.*

## ARGUMENT

Plaintiff lacks standing under Rule 12(b)(1) because he fails to allege a concrete injury-in-fact or a credible intent to return to the Website, especially in light of his filing at least 21 nearly identical lawsuits in this District over the past six months. Second, Plaintiff's demonstrably false allegations, which are contradicted by Dalstrong's technical evidence, do not demonstrate Article III standing.

### I. DEFENDANT REQUESTS THIS COURT TAKE JUDICIAL NOTICE OF PLAINTIFF'S OTHER COMPLAINTS FILED IN THIS DISTRICT

Plaintiff has filed at least 21 ADA website accessibility cases in this district in the past six months. See **EXHIBIT 1**. The complaints all share a striking similarity, with minor changes to the Defendant and the products at issue. Defendant requests that this Court take judicial notice of the 21 complaints, which are matters of public record. *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) (citations omitted) ("It's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss….And [t]aking judicial notice of matters of public record need not convert a motion to dismiss into a motion for summary judgment.") (citations omitted).

Plaintiff's litigation history does not, by itself, defeat standing. Nor does Defendant contend that a plaintiff lacks standing merely because he acts as a tester or has filed other ADA cases. But the pattern is relevant here because Plaintiff's Complaint does not contain individualized allegations tied to Defendant's website or any actual transaction Plaintiff attempted to complete. Instead, Plaintiff has filed a series of materially similar complaints against a wide range of unrelated businesses, each reciting the same basic theory of injury.

This matters because Defendant's contemporaneous technical records contradict the very facts on which Plaintiff's standing depends. **EXHIBIT 2**. Plaintiff alleges that he visited Defendant's website on November 3, 2025, encountered accessibility barriers, and added the Meat Cleaver 9 to his shopping cart. But Defendant's records show that no user from Illinois viewed that product on that day, and no session matching Plaintiff's alleged conduct occurred. *Id.* Those records do not merely dispute the merits; they refute the alleged jurisdictional facts that supposedly establish injury-in-fact and traceability.

In ordinary circumstances, a plaintiff's other lawsuits would have little bearing on whether he has standing in a particular case. Here, however, the combination of boilerplate allegations, numerous similar filings against unrelated businesses, and objective technical data showing that the alleged website interaction did not occur strongly suggests that Plaintiff did not conduct a meaningful pre-suit inquiry into Defendant's website before filing suit. It shows that Plaintiff has not carried his burden to establish Article III standing. Plaintiff cannot rely on formulaic allegations of a website visit and cart interaction where the available technical evidence shows that the alleged interaction did not happen. Accordingly, this Court should dismiss Plaintiff's Complaint.

## II. PLAINTIFF LACKS ARTICLE III STANDING

"As a jurisdictional requirement, the plaintiff bears the burden of establishing standing." *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443 (7th Cir. 2009). To establish standing, Plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). An injury-in-fact must be "'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Id.* at 339 (quoting

*Lujan v Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Plaintiff has not, and cannot, establish a concrete and particularized injury and therefore cannot establish Article III standing through his boilerplate and conclusory allegations.

**A. Plaintiff's Demonstrably False Allegations Do Not Establish Article III Standing.**

A complaint's allegations are ordinarily accepted as true at the Rule 12(b)(6) stage. But that rule does not require the Court to accept allegations that are demonstrably false. "It is well settled that in deciding a Rule 12(b)(6) motion, a court may consider documents attached to a motion to dismiss if they are referred to in the plaintiff's complaint and are central to his claim." *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690 (7th Cir. 2012). "The law is clear that when considering a motion that launches a factual attack against jurisdiction, 'the district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether subject matter jurisdiction exists.'" *Apex Digit. Inc.*, 572 F.3d at 444 (quoting *Evers v. Astrue*, 536 F.3d 651, 656-57 (7th Cir. 2008)).

Plaintiff's standing theory depends on an alleged website visit and alleged interaction with Defendant's products. Specifically, Plaintiff alleges that he visited Defendant's website on November 3, 2025, encountered accessibility barriers, and added a Meat Cleaver 9 to his cart. Compl. ¶ 35(i). Those allegations are not merely background facts; they are the asserted basis for Plaintiff's claimed injury-in-fact and traceability. But Defendant's contemporaneous technical records show that no such interaction occurred. **EXHIBIT 2**; **EXHIBIT 3.** On November 3, 2025, Defendant's records show no session matching Plaintiff's conduct, no visitor from Henry County, Illinois, and no visitor viewing the Meat Cleaver 9 from the State of Illinois. *Id.*

Because Plaintiff did not experience the alleged website interaction, Plaintiff has not established a concrete and particularized injury fairly traceable to Defendant's conduct. Plaintiff cannot manufacture Article III standing through boilerplate allegations that are contradicted by objective technical records. At minimum, the Court should disregard Plaintiff's unsupported jurisdictional allegations and require Plaintiff to come forward with competent evidence showing that he personally visited the website, encountered the alleged barrier, attempted the alleged transaction, and faces a real and immediate threat of future injury.

This is not a situation in which Defendant first raised the discrepancy through motion practice. Before filing this Motion, Defendant advised Plaintiff's counsel that Defendant's contemporaneous technical records did not reflect the website visit, product interaction, or add-to-cart event alleged in the Complaint. **EXHIBIT 4.** Defendant asked Plaintiff to clarify the factual basis for those allegations or provide additional information that would allow Defendant to identify the alleged session. Plaintiff declined to provide any such information. That refusal reinforces the jurisdictional problem: once Defendant factually challenges standing with objective technical records, Plaintiff may not rest on boilerplate allegations of a website visit and cart interaction. Plaintiff must establish a concrete injury-in-fact fairly traceable to Defendant's conduct.

Defendant does not rely on this evidence for its Rule 12(b)(6) argument, which challenges the legal sufficiency of the Complaint even assuming Plaintiff's allegations are true. Rather, Defendant submits this evidence solely in support of its factual Rule 12(b)(1) challenge to Plaintiff's standing. Accordingly, consideration of the evidence does not convert Defendant's motion into one for summary judgment.

### B. Plaintiff's Emotional Distress Allegations Do Not Allege a Concrete and Particularized Injury-In-Fact

A particularized injury is one that "must affect the plaintiff in a personal and individual way." *Spokeo*, 578 U.S. at 339 (citation omitted). "To be 'concrete,' the asserted injury must be 'real,' and not 'abstract.'" *Id.* at 340.

Plaintiff's allegations of humiliation, frustration, embarrassment, anxiety, and similar emotional reactions (Compl. at ¶ 50) are not particularized. As a result, they do not establish Article III injury. The Seventh Circuit has made clear that not all "indignation" harms are sufficient to confer standing and has distinguished between two categories of harm in discrimination cases. *Carello v. Aurora Policeman Credit Union*, 930 F.3d 830, 834 (7th Cir. 2019) citing *Griffin v Dep't of Lab. Fed. Credit Union,* 912 F.3d 649, 654 (4th Cir. 2019). "A plaintiff 'personally denied equal treatment' by the challenged discriminatory conduct' has suffered a concrete injury, but dignitary harm stemming from the mere knowledge that discriminatory conduct is occurring is an 'abstract stigmatic injury' that the plaintiff lacks standing to vindicate." *Id.* (quoting *Allen v Wright*, 468 U.S. 737, 755-56 (1984)). In short, "[i]ndignation at violation of the law is not concrete because it does not impact the plaintiff personally; it is not particularized because it does not affect him in an 'individual way.'" *Id*. (citation omitted).

*Carello* involved a legal barrier to the plaintiff's use of the defendant's services. Specifically, because the plaintiff was not a city or county employee, he was legally ineligible to become a member of the credit union. *Id*. at 832. Here, no such legal barrier exists in purchasing a meat cleaver. However, *Carello's* reasoning still forecloses Plaintiff's attempt to rely on abstract dignitary harm. *Carello* distinguished between a plaintiff who is "personally denied equal treatment" and one who alleges only "abstract stigmatic injury" arising from awareness of supposed discrimination. *Id*. at 834 (citation omitted). Here, the Complaint offers only a single

alleged visit to a nationwide retail website and conclusory assertions that Plaintiff wished to buy a product and will return to do so in the future. Compl. ¶¶ 40-41. The remaining alleged injuries are subjective feelings resulting from encountering asserted noncompliance. That is not enough to show that Plaintiff suffered the kind of concrete, personal injury required for Article III standing.

Plaintiff's Complaint seeks compensatory damages for "emotional distress, including, without limitation, emotional and mental anguish, violation of privacy, humiliation, stress, anger, frustration, embarrassment, and anxiety." Compl. ¶ 50. These are precisely the abstract, stigmatic reactions that *Carello* forecloses as a basis for Article III injury. They are subjective responses to encountering alleged noncompliance, not concrete harm flowing from a personal denial of equal access to Dalstrong's goods or services. To the extent Plaintiff's injury rests on these emotional distress allegations rather than an actual, completed denial of access, those allegations do not independently establish the concrete injury Article III requires. *Carello*, 930 F.3d at 834.

This point operates independently of Defendant's factual challenge to the alleged website visit. Whether or not the alleged interaction occurred, the emotional distress allegations in ¶ 50 do not constitute a cognizable Article III injury under *Carello*. And because the only remaining alleged injury—Plaintiff's claimed inability to complete a transaction—is directly contradicted by Defendant's contemporaneous technical records, the Complaint is left without a concrete and particularized injury sufficient to confer standing. Plaintiff cannot use abstract dignitary harm to fill the gap left by a website visit that the evidence shows never happened.

### C. Plaintiff has Failed to Allege a Threat of Future Injury or a Credible Intent to Return.

The Seventh Circuit has reiterated that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074 (7th Cir.

2013) (quoting *Lujan*, 504 U.S. at 564). "[T]he Court has clarified that plaintiffs' professions of an intent to return to the places they have visited before—where they will presumably, this time, suffer the same injury they suffered before—is simply not enough." *Id.* Accordingly, a plaintiff's professed intent to return must be supported by concrete, particularized facts demonstrating that future injury is imminent. The Supreme Court has expressly rejected "'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be." *Id*. quoting *Lujan*, 504 U.S. at 564. And although a plaintiff may in some circumstances rely on a conditional intent to return, standing still requires facts making it reasonable to infer a genuine future return to the particular accommodation in the future. *Id*. (quotation omitted).

In *Scherr*, the Seventh Circuit rejected an attempt to establish standing through generalized assertions of future travel and speculative future visits. There, the plaintiff sought to pursue claims involving dozens of Courtyard Marriott locations by pointing to prior trips she had taken to various cities where Courtyard hotels were located. *Scherr*, 703 F.3d at 1075. The court nevertheless held that standing was lacking because "at no point does she claim that she would visit a particular Courtyard Marriott but for the alleged ADA violations, and she does not show an intent even to attempt to any geographic area where another Courtyard Marriott is located." *Id.* Absent such a showing, the court concluded, the plaintiff could not establish standing to pursue claims against those hotels. *Id.* The same defect exists here. Accepting Plaintiff's allegations would effectively eliminate the injury-in-fact in website litigation. Any plaintiff could establish standing against virtually any website simply by alleging a generalized intention to return at some unspecified point in the future. *Scherr* rejected precisely that type of speculative and untethered standing theory.

Plaintiff's Complaint lacks allegations that would plausibly allege a real and immediate threat of future harm. Paragraph 41 states that Plaintiff intends to revisit the website "immediately

upon Defendant correcting the access barriers," is interested in Defendant's kitchen-related products, and "still wants to purchase kitchen knives." Compl. ¶ 41. But those allegations remain conditional and generalized. They do not allege any prior purchases from Defendant, any history of repeated visits to the website, any concrete timetable for a renewed transaction, or any facts showing why Plaintiff is likely to return to this particular retailer rather than any of the many other sellers of similar products. These are not well-pled facts showing a reasonable inference of genuine future return to the Website. This is not enough to show a real and immediate threat of future injury. *See Calcano v. Swarovski North Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (Second Circuit affirming a dismissal based on lack of standing and rejecting allegations that plaintiffs lived in close proximity to the defendant's business, that they were prior customers, and that they intended to return once the produce is accessible to the blind as "nothing more than legal conclusions couched as factual allegations."). Likewise, Plaintiff's threadbare recitals of an alleged intent to return are not actual facts, need not be taken as true, and as a result, Plaintiff's Complaint fails to allege the mandatory future injury to establish standing.

Moreover, Plaintiff's stated intent to return is explicitly conditional on Defendant first remedying the alleged barriers. This is not a concrete plan. It is a statement that Plaintiff will not return unless he prevails in this litigation, asking the Court to presume the very injunctive relief he seeks in order to establish the standing required to seek it. A plaintiff's conditional, litigation-dependent intent to return does not satisfy the imminence requirement for future injury. *Scherr*, 703 F.3d at 1074. Accordingly, Plaintiff's Complaint should be dismissed for lack of standing.

### D. The Use of Near-Identical, Boilerplate Complaints Undermines the Plausibility of Plaintiff's Alleged Injury.

The Court may take judicial notice of Plaintiff's 21 materially similar ADA website complaints filed within the past four months because they are matters of public record. And

because Defendant raises a factual challenge to standing, the Court may look beyond the complaint and consider that jurisdictional record in determining whether Plaintiff has plausibly shown a real and immediate threat of future injury. *Silha*, 807 F.3d at 173. Plaintiff's assertion that he intends to return to Dalstrong's website to purchase a meat cleaver is not evaluated in a vacuum. Against the backdrop of 21 near-identical suits against unrelated online retailers selling unrelated goods, Plaintiff's alleged intent to return here appears not concrete and site-specific, but generic and litigation-driven. As the Northern District of Illinois recently remarked in a nearly identical context involving Plaintiff's counsel, "That's a lot of shopping gone wrong." *Henry v. Omoi, Inc.*, No. 25-CV-3151, 2026 WL 636799, at *2 (N.D. Ill. Mar. 6, 2026).

*Scherr* requires facts supporting a reasonable inference that Plaintiff actually intends to return to the particular accommodation at issue. *Scherr*, 703 F.3d at 1074. The judicially noticeable pattern of Plaintiff's recent filings undercuts that inference. Plaintiff says he intends to return to Dalstrong's website because he is specifically interested in Defendant's kitchen knives. But over the same short period, Plaintiff has made materially similar allegations of concrete interest in numerous unrelated products sold by numerous unrelated merchants. That pattern may not prove bad faith, but it does undermine the plausibility that Plaintiff faces a real and immediate threat of future injury from Dalstrong's Website in particular, as opposed to a generalized desire to file lawsuits to extract settlements based on boilerplate allegations of ADA non-compliance.

The problem is compounded by the judicially noticeable record. Plaintiff has simultaneously alleged the same particularized intent to return—the same genuine interest in a specific product from a specific retailer—against at least 21 unrelated merchants in this District over the past six months. He cannot plausibly hold a concrete, site-specific intent to return to all of them. *See Winegard v. Golftec Intell. Prop. LLC*, 674 F. Supp. 3d 21, 26 (E.D.N.Y. 2023)

(dismissing serial ADA website filer for lack of standing and holding that "judicial experience and common sense" render cookie-cutter standing allegations implausible under *Iqbal*). A genuine consumer who encountered barriers on Dalstrong's website would have no reason to be simultaneously pursuing identical claims against sellers of knitting products, outdoor furniture, and pet products. That pattern does not merely raise questions of credibility; it defeats the particularity Article III requires. Where a website "has no actual, specific relevance to that particular plaintiff beyond the plaintiff's desire to seek out and remedy ADA violations, no concrete and particularized injury has been alleged." *Id.* (citation omitted).

## III. PLAINTIFF'S COMPLAINT SHOULD BE DISMISSED PURSUANT TO 12(B)(6) BECAUSE THE ADA DOES NOT APPLY TO STANDALONE WEBSITES

Even if this Court concludes that Plaintiff has adequately alleged Article III standing, his Complaint independently fails to state a claim upon which relief can be granted and should be dismissed under Rule 12(b)(6). Two separate grounds support dismissal on the merits. First, Title III does not apply to standalone commercial websites untethered to a physical place of public accommodation, and Plaintiff's claim depends entirely on that theory. Second, even assuming Title III applies in the website context, Plaintiff's Complaint fails to allege a violation of the statute as written. The Complaint is structured as a WCAG technical audit, not as an allegation that Plaintiff was denied meaningful access to Dalstrong's goods or services, and WCAG is not the governing legal standard under Title III. Either ground independently warrants dismissal.

### A. The ADA Does Not Apply to Standalone Websites

Defendant preserves its position that Title III does not apply to standalone websites untethered to a physical place of public accommodation and therefore that Plaintiff fails to state a claim to the extent his theory depends on treating dalstrong.com itself as a "place of public accommodation."

Defendant recognizes that Seventh Circuit precedent may complicate dismissal on this ground at the pleading stage. *See Morgan v. Joint Admin. Bd., Ret. Plan of the Pillsbury Co. & Am. Fed'n of Grain Millers, AFL-CIO-CLC*, 268 F.3d 456, 459 (7th Cir. 2001) (holding that Title III's public accommodation concept is not limited to a physical site and that the "site of the sale is irrelevant" to ensuring disabled persons equal access to goods and services offered to the public.) But *Morgan* did not involve a website, did not address internet commerce, and did not squarely decide whether a standalone website itself constitutes a place of public accommodation within the meaning of Title III.

The most recent authority within this District has recognized substantial textual difficulties with extending Title III to standalone websites. As one court explained, the ADA repeatedly refers to physical locations such as "an inn, hotel, motel," "a restaurant," and "a motion picture house," while making no reference to websites or internet-based services. *Henry v. Omoi, Inc.*, No. 25-CV-3151, 2026 WL 636799, at *3 (N.D. Ill. Mar. 6, 2026). The court further observed that "[a] website is not a place. You can't physically go there." *Id.* Accordingly, the court concluded that a standalone website does not naturally fall within the statutory definition of a "place of public accommodation." *Id.*

At minimum, the issue remains open and unsettled. Plaintiff nevertheless seeks to impose sweeping accessibility obligations based on generalized allegations untethered to any concrete showing that Defendant denied Plaintiff any meaningful access to a qualifying place of public accommodation.

### B. Plaintiff's Complaint Fails to State a Claim Because Alleged WCAG Noncompliance Does Not Establish a Violation of Title III.

Title III of the ADA requires that disabled individuals receive "full and equal enjoyment" of a public accommodation's goods and services. 42 U.S.C. § 12182(a). It does not require

technical perfection measured against evolving private guidelines. The Web Content Accessibility Guidelines ("WCAG") are technical standards developed by the World Wide Web Consortium, a private industry consortium. They have never been enacted by Congress, and the Department of Justice has never formally promulgated them as binding accessibility standards governing private commercial websites under Title III. When the DOJ did formally adopt WCAG-based requirements in 2024, it did so only for Title II public entities—state and local governments—expressly declining to extend those requirements to private businesses governed by Title III. *See Nondiscrimination on the Basis of Disability; Accessibility of Web Information and Services of State and Local Government Entities*, 89 Fed. Reg. 31,320 (Apr. 24, 2024). That deliberate distinction forecloses treating WCAG compliance as the operative legal standard here. Plaintiff's Complaint, however, is structured almost entirely as a WCAG audit—itemizing alleged deviations from WCAG criteria such as focus order, alternative text, and keyboard navigation—without alleging facts plausibly showing that any of these technical issues actually denied him meaningful access to Dalstrong's goods or services. Bare allegations of WCAG nonconformity, untethered to a showing of actual exclusion from a public accommodation's goods and services, do not state a claim under Title III as written.

This matters particularly in the context of the serial litigation pattern described above. When a plaintiff files twenty-one materially identical complaints against unrelated retailers within six months, substituting only the defendant's name and the product allegedly sought, the WCAG-based allegations in each complaint cannot reflect a genuine, individualized assessment of each website's accessibility. As the Northern District of Illinois recently observed in a nearly identical context, this type of litigation operates as "a glorified copy-and-paste operation" that imposes substantial economic pressure on defendants irrespective of merit, precisely because "settling is

cheaper than fighting." *Henry v. Omoi, Inc.*, No. 25-CV-3151, 2026 WL 636799, at *2 (N.D. Ill. Mar. 6, 2026). At minimum, where a plaintiff's WCAG-based allegations are drawn from a boilerplate template rather than a site-specific accessibility evaluation, those allegations cannot carry the plausibility weight that *Iqbal* and *Twombly* require.

Defendant preserves for appeal its position that imposing Title III liability based solely on alleged deviation from nonbinding private technical guidance raises substantial fair notice concerns under the Due Process Clause of the Fifth Amendment. *See FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253 (2012) ("A fundamental principle in our legal system is that laws which regulate persons or entities must give fair notice of conduct that is forbidden or required."). The absence of formally promulgated Title III website accessibility standards, combined with the inherently evolving and qualitative nature of WCAG criteria, means that businesses currently lack clear notice of what the law requires, what constitutes sufficient remediation, and when compliance has been achieved. The Court need not resolve that constitutional question to dismiss this Complaint on standing grounds. But the fair-notice concern reinforces why courts should require plaintiffs in website accessibility cases to allege, at a minimum, that specific barriers caused an actual denial of meaningful access to goods or services—not merely that a website failed to conform to technical criteria found nowhere in the governing statute or its implementing regulations.

## CONCLUSION

Plaintiff's Complaint should be dismissed on multiple independent grounds. Defendant's contemporaneous technical records establish that the website visit, product interaction, and add-to-cart event alleged in the Complaint did not occur—a factual defect that goes to the heart of Plaintiff's claimed injury-in-fact and cannot be cured by boilerplate allegations drawn from a

litigation template deployed against twenty-one unrelated businesses in six months. Independently, Plaintiff's intent to return is conditional and litigation-dependent, his emotional distress allegations are precisely the abstract dignitary harms the Seventh Circuit has held insufficient to confer standing, and his Complaint states no violation of Title III as written because alleged WCAG nonconformity untethered to an actual denial of meaningful access does not establish liability under the statute. Defendant further preserves its position that Title III does not apply to standalone commercial websites.

For the reasons stated, Defendant Dalstrong America Inc. respectfully requests this Court dismiss Plaintiff's Complaint with prejudice pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), and grant such other and further relief as this Court deems just and proper.

.

Dated: June 26, 2026

/s/ John Di Giacomo
John Di Giacomo
Amanda Igra
Revision Legal, PLLC
444 Cass Street, Suite D
Traverse City, MI 49684
john@revisionlegal.com
Amanda.igra@revisionlegal.com

## CERTIFICATE OF COMPLIANCE

The undersigned hereby certifies that this Brief in Support of Defendant's Motion to Dismiss complies with Local Rule 7.1 and contains 5,581 words.

Dated: June 26, 2026

/s/ John Di Giacomo
John Di Giacomo
Amanda Igra
Revision Legal, PLLC
444 Cass Street, Suite D
Traverse City, MI 49684
john@revisionlegal.com
Amanda.igra@revisionlegal.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on the date below, the foregoing Brief in Support of Motion to Dismiss was filed with the Court via the Court's ECF system

Dated: June 26, 2026

/s/ John Di Giacomo
John Di Giacomo
Amanda Igra
Revision Legal, PLLC
444 Cass Street, Suite D
Traverse City, MI 49684
john@revisionlegal.com
Amanda.igra@revisionlegal.com